ENGEL, Chief Judge.
This is in the words of Justice Scalia, one of those “admittedly rare” cases where the debtor in a bankruptcy proceeding may ultimately prove to be solvent.[1] The question before us is whether the unsecured creditors in such circumstances are entitled to postpetition interest as a matter of law. The unique circumstance in this case is that the debtor, although clearly perceived as insolvent on the date of confirmation of the plan, subsequently achieved a large and unexpected structured settlement of a contingent and unliquidated claim. The confirmed plan contained provisions for dealing with the funds, if any, resulting from the claim. The plan apparently did not contemplate the possibility of a structured settlement and made no express provision for payment of postpetition interest to unsecured creditors. Appellant argues that the district court erred in holding that these unsecured creditors were entitled to postpetition interest.
On January 11, 1982, appellant Kentucky Lumber Company filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101-1174. At the time Kentucky Lumber filed, and later when its plan was confirmed, its sole unsecured asset of any substance was a claim against the Ralston-Purina Company. This was a contingent and unliquidated claim of uncertain value for the recovery of certain expenses and losses of profits which Kentucky Lumber had incurred in the so-called “Louisville Explosions” litigation then pending in the United States District Court for the Western District of Kentucky, and arising out of sewer explosions which had occurred on February 13, 1981.
On April 15, 1983, Kentucky Lumber filed its original plan of reorganization. As a result of objections by and negotiations with the debtor’s unsecured creditors and its primary secured creditor, the First National Bank of Louisville, the plan was subjected to amendments on May 2, May 19, and May 26, 1983. The plan as confirmed in July of 1983 provided that the unsecured creditors[2] would receive thirty percent of their claims against the debtor as of “the effective date of the plan and after allowance and approval by the Court,” plus a percentage of the recovery, if any, stemming from the debtor’s lawsuit against Ral-ston-Purina. The confirmed plan did not provide for the payment of any post-filing interest on the unsecured claims.
Approximately one and one-half years after confirmation of the plan, Kentucky achieved a large structured settlement agreement with Ralston-Purina. The bankruptcy court carefully considered and approved the settlement. The settlement required that payments to Kentucky Lumber, the debtor in possession, be spread out over a number of years. Most important, the settlement over time was sufficient to repay all unsecured creditors the entire balance of their original claims, but exclusive of postpetition interest. It is not clear at present, but it is at least possible that some money may remain in excess of the unsecured creditors’ claims and hence be available to the debtor or its shareholders.
After approval of the settlement by the bankruptcy court, the unsecured creditors filed a motion seeking payment of postpetition interest on their claims. The bank *676 ruptcy court held a hearing on the matter, and at that time the unsecured creditors limited their claims to interest running from the date of settlement and not from the date the petition was filed with the bankruptcy court. The bankruptcy court determined that the unsecured creditors were not entitled to such interest and more specifically that the parties were bound by the terms of the confirmed plan. Upon denial of that motion appeal was taken to the United States District Court for the Western District of Kentucky. The district court ultimately reversed the decision of the bankruptcy court holding that the creditors were entitled to such interest as a matter of law under 11 U.S.C. § 727(a)(5). It then remanded the case for the determination of such interest. Kentucky Lumber filed this appeal on October 28, 1986.
I.
At the outset we are presented with a threshold question whether we have appellate jurisdiction to reach the issue of entitlement to postpetition interest. That question arises because of some uncertainty concerning the finality of the district court order from which appeal was ultimately taken. Suffice it to say that after carefully examining the record we conclude that the orders appealed from are final orders within the meaning of 28 U.S.C. § 158(d) (Supp. IV 1986). While the issue is not without some difficulty we conclude that under In re Gardner, 810 F.2d 87 (6th Cir.1987), the district court’s order was final and appealable and we have jurisdiction. We therefore proceed to the merits of this appeal.
II.
The general rule of actions in bankruptcy is that unsecured creditors are not entitled to postpetition interest upon their allowable claims. 11 U.S.C. § 502(b)(2) (1982 & Supp. IV 1986). An exception to this rule is found in 11 U.S.C. § 726(a)(5) (1982) governing general distribution upon liquidation. Section 726 provides generally for liquidation and further provides that fifth in the order of payment of claims against a bankrupt estate is interest at the legal rate from the date of filing of the petition on any claim paid under the previous four paragraphs of subsection (a). It is evident that the purpose of section 726 in providing for postpetition interest is to prevent debtors from abusing the bankruptcy process by using it to delay payments and avoid interest obligations when at the time of filing the petition the debtor was actually solvent. Here it ultimately developed that the bankrupt’s contingent claim against Ralston-Purina, settled a year and a half after confirmation, would be sufficient over a period of years to pay all unsecured creditors in full. The district judge concluded that although the reorganization plan had not provided for postpetition interest, the unsecured creditors were also entitled to the benefits of section 726 and hence to postpetition interest on their several claims. He therefore reversed the ruling of the bankruptcy judge who had concluded that the postpetition interest exception did not apply because the debtor was in fact insolvent at the time of filing the petition and was later rendered solvent only by the subsequent and unexpected recovery from the unliquidated claim. This was, as the bankruptcy judge observed, an event which proceeded from the efforts of the debtor after filing in bankruptcy and which did not change the actual circumstances of insolvency at the date of filing (emphasis added). Upon our review of the statute we conclude that consideration of the objectives of the Bankruptcy Act in the context of the facts of this case supports the holding of the bankruptcy court and we therefore reverse the district court’s decision.
As the First and Ninth Circuits have observed, “Despite the general prohibition on the payment of postpetition interest, three exceptions have been developed by the federal courts.” In re Boston & Maine Corp., 719 F.2d 493, 496 (1st Cir.1983). “An award of post-petition interest may be allowed in three exceptional cases: (1) where the alleged bankrupt proves solvent (2) where the ‘collateral produces income after filing of the petition,’ and (3) *677 where the collateral ‘is sufficient to pay interest as well as the principal of the claim.’ (citations omitted).” Matter of Walsh Construction, Inc., 669 F.2d 1325, 1330 (9th Cir.1982).
These exceptions are not rigid doctrinal categories. Rather, they are flexible guidelines which have been developed by the courts in the exercise of their equitable powers in insolvency proceedings. The reorganization court must consider whether to grant postpetition interest, not as an abstract matter, but in light of the nature of each claim and the equities of the case before it. At all times the reorganization court must be guided by the basic equitable principle announced in Vanston [Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946)]:
It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.
In re Boston & Maine Corp., 719 F.2d at 496 (quoting Vanston, 329 U.S. at 165, 67 S.Ct. at 241) (citations omitted). The exception with which we are concerned here occurs where the alleged bankrupt is later shown to have been solvent. This exception to the general rule helps to prevent debtors from abusing the bankruptcy process by merely using it to delay payments and avoid interest penalties. Close examination of the facts of this case reveals that it fits within the general rule and not the exception.
The key sections of the confirmed plan in question provide as follows:
I. Payments to Unsecured Creditors
Under confirmation of the Plan, payments to allowed unsecured creditors shall be made in the following amounts: Class 4(1) claims shall be paid in full, in cash, upon the effective date of the Plan and after allowance and approval by the Court.
Class 4(2) creditors: Class 4(2) claims shall be paid in an amount equal to 30% of any such claim, upon the effective date of the Plan and after allowance and approval by the Court.
Class 4(3) creditors: Class 4(3) claims shall be paid in an amount equal to 30% of any such claim, upon the effective date of the Plan and after allowance and approval by the Court.
sit * # * * *
L. The Ralston-Purina Claim
The Debtor is presently a contingent unliquidated claimant against the Ral-ston-Purina Company in the consolidated action known as the “Louisville Explosions Litigation”, [sic] being Civil Action No. C-81-0080-L(B) in the United States District Court for the Western District of Kentucky at Louisville, wherein it is making a claim for certain expenses and loss of profits allegedly caused by the sewer explosions on February 13, 1981. Any recovery, if any, is speculative, and it cannot be determined at this time with any accuracy what an eventual recovery might be, if any. Should the Debtor reach a settlement in the litigation, or should it obtain, and collect, a judgment against the Ralston-Purina Company, the proceeds of any such settlement, or collected judgment, shall be distributed, to the extent such funds are available, as follows:
(a) For attorney’s fees in an amount equal to 15% of the total settlement or collected judgment, plus payment and/or reimbursement of costs and expenses, pursuant to Contract between the Debtor and Counsel representing the Debtor;
(b) To the First National Bank of Louisville in reimbursement of such funds as it will have allowed to be advanced in payment of administrative, priority, and unsecured creditor payments outlined in Article III, Section I;
(c) Seventy-five percent of the remaining net recovery, if any, shall be paid to the unsecured creditors who have not been paid in full, being Class 4(2), and Class 4(3) creditors; payments to said unsecured creditors shall be in reduction of the unpaid balance of *678 their claims, prorata, or in full, to the extent such funds are available;
(d) The remaining 25% of the net recovery, if any, shall be paid to the First National Bank of Louisville in partial satisfaction of its principal, interest, and costs.
Under the plan the class 4(2) and 4(3) unsecured creditors with which we are concerned received 30% of their claim up front. Any portion of the remaining unpaid 70% of their claims was to be recovered from a Ralston-Purina recovery, if in fact it materialized. The payments to the unsecured creditors from the Ralston-Purina claim would be paid to the unsecured creditors “in reduction of the unpaid balance of their claims, prorata, or in full, to the extent such funds [were] available.”
On appeal the question of entitlement is presented as a matter of law under section 726(a). Section 726 is the general distribution section for liquidation cases. As we have mentioned, subsection (a)(5) provides that fifth in the order of payment in a liquidation case is interest at the legal rate from the date of filing the petition on any claim paid under the previous four paragraphs of subsection (a). Section 726 does not apply directly to Chapter 11 cases. It does, however, apply indirectly through the “best interests of creditors” test found in section 1129(a)(7).[3]
(a) The court shall confirm the plan only if all of the following requirements are met
* * * * * *
(7) With respect to each class—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest in property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date____
Id. (emphasis added).[4]
Before confirming the plan on July 13, 1983, the bankruptcy court determined that all of the requirements of 11 U.S.C. § 1129 had been met, including findings that Kentucky Lumber was not solvent and that under the plan the unsecured creditors would receive not less than they would have received if the debtor were liquidated under Chapter 7 as of the effective date of the plan. The “best interests of creditors” test is a pre-confirmation requirement. There has been no objection that the confirmed plan is not in the best interests of creditors. The district court incorrectly used hindsight. When this plan was confirmed in July of 1983 it was in the best interests of creditors. The district court erred in interpreting section 726(a)(5) as mandating the payment of postpetition interest to unsecured creditors whenever after confirmation of the plan there should appear the possibility that the debtor may retain funds.
In deciding that unsecured creditors were entitled to postpetition interest, the district court relied upon In re Butler, 42 Bankr. 777, 787 (Bankr.E.D.Ark.1984). However, Butler is distinguishable in two important respects. First, Butler involved a proposed plan objected to by unsecured creditors before confirmation. Here, the unsecured creditors voted to accept the plan and seek to make their objections only after confirmation. Under 11 U.S.C. § 1141(a), “[T]he provisions of a confirmed plan bind the debtor ... and any creditor whether or not the claim or interest of such creditor ... is impaired under the plan and *679 whether or not such creditor has accepted the plan.” It is significant that the unsecured creditors have not argued before this court that the bankruptcy court improperly confirmed the plan in the first place.
The second key distinction is apparent through the liquidation test. The debtor in Butler was solvent on the effective date of the plan. In contrast, here it was unambiguously determined by the bankruptcy court that the debtor was insolvent “as of the effective date of the plan.” The debtor possessed only a contingent, unliquidated claim against Ralston-Purina at that time which might have turned out to be worthless. It was not until a year and one-half after confirmation that the Ralston-Purina claim became vested and liquidated. There are no allegations that the debtor’s claim was not vigorously contested nor is there any suggestion that the debtor delayed resolution of the claim until after confirmation of the plan. Clearly the debtor did not abuse the bankruptcy process by hiding the fact that it was solvent; to the contrary, the facts reveal that the debtor was truly insolvent at the time of confirmation.
These unsecured creditors were impaired creditors under the plan of reorganization and were entitled to vote for or against the plan as provided in 11 U.S.C. § 1126(a) (1982). They overwhelmingly voted in favor of this plan aware that it made no provision for postpetition interest even should the Ralston-Purina claim result in a structured settlement. The unsecured creditors are simply too late in making their claim for postpetition interest. These creditors settled for payment of 30 cents on the dollar with the possibility of being paid in full if the debtor was successful in his claim against Ralston-Purina.
The unsecured creditors complain that they should be entitled to interest because under the settlement it will be several years until they are paid in full. Their argument is not persuasive. Their posture is no different from other creditors whose payment is necessarily deferred through the intervention of bankruptcy and whose right to postpetition interest is restricted by the general rule in bankruptcy law. Because of the structured settlement they at least receive the remaining 70% balance of their original claim. A lump sum settlement might well have seen them receive far less than they receive under the structured settlement. There is no evidence that the settlement was in bad faith nor that it was intended to extend the payment period to deprive the unsecured creditors of their earlier receipt of the funds. To the contrary, the structured settlement proved beneficial to both the debtor and the unsecured creditors. The equitable principles recognized in Vanston Bondholders Protective Committee v. Green, supra, plainly support enforcing the reorganization plan as originally confirmed. Accordingly, the judgment of the district court is REVERSED.

. United States Savings Ass’n v. Timbers of Inwood Forest Associates, — U.S. -, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988).

. The unsecured creditors in this case are class 4(2) and 4(3) creditors in the confirmed plan. The Thompsons, class 5 creditors, are to be treated as general unsecured creditors entitled to equal treatment with class 4(2) and 4(3) creditors if they prevail in a separate lawsuit against Kentucky Lumber. Therefore the group will be referred to collectively as unsecured creditors.

. See 4 Collier on Bankruptcy ¶ 726.01 (15th ed. 1988).

. Paragraph (7) incorporates the former “best interest of creditors" test found in chapter 11, but spells out precisely what is intended. With respect to each class, the holders of the claims or interests of that class must receive or retain under the plan on account of those claims or interest property of a value, as of the effective date of the plan, that is not less than the amount that they would so receive or retain if the debtor were liquidated under chapter 7 on the effective date of the plan.
H.Rep. No. 95-595, p. 412, 95th Cong. 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6368.