### In re COMSTOCK FINANCIAL SERVICES, INC., Debtor.

**Bankruptcy No. LA 85–15722–VZ.**

United States Bankruptcy Court,
C.D. California.

March 1, 1990.

---

\* Judge, Orange County Superior Court, assigned by the Chairperson of the Judicial Council.

David S. Kuptez, Jay R. Davis, Sulmeyer, Kupetz, Baumann & Brothman, Los Angeles, Cal., Chapter 7 Trustee.

Richard A. DeSantis, Los Angeles, Cal., for creditors.

## MEMORANDUM OF OPINION

VINCENT P. ZURZOLO, Bankruptcy Judge.

This is a dispute between Max H. Rush, trustee in this Chapter 7 case ("Trustee"), and a group of individuals holding claims against this estate ("Creditors"). The dispute arises out of the Creditors' assertion of claims against this estate, including a claim for a constructive trust, and Trustee's objections to those claims.

### I

### FACTS

Comstock Financial Services, Inc. ("Debtor") was in the business of selling securities, primarily to individual investors. Debtor made many mistakes in conducting its business including not properly registering the securities that it sold and not securing the Creditors' investments with treasury bills, as Debtor represented to its investors. Investors commenced lawsuits against Debtor and its principals, and Debtor filed a voluntary petition for relief under Chapter 11 on October 29, 1985.

Debtor's attempt to reorganize under Chapter 11 failed and the case was converted by stipulation with the United States Trustee to Chapter 7 proceeding. The United States Trustee then appointed Trustee on February 27, 1986.

Creditors commenced adversary proceedings against Debtor and against former principals of Debtor who were also debtors in related Chapter 7 cases. In these adversary proceedings Creditors sought to fix the amount of their claims against the Debtor and its codefendants and also to obtain a declaration of non-dischargeability under 11 U.S.C. § 523.

After considering Creditors' motions for summary adjudication of issues and for permissive abstention of jurisdiction, the Court[1] entered its "Order Granting Abstention from Jurisdiction and Permitting Plaintiff Cathy Bennett and Rosaline Keenan to Prosecute Claims" (the "Abstention Order") on February 8, 1988. In the Abstention Order, the Court found that it was in the interest of justice to allow Creditors to "litigate their claims against Debtor–Defendants Roy L. Comstock and Comstock Financial Services, Inc. in the California state court...." The Bankruptcy Court's abstention from exercising its jurisdiction over these adversary proceedings was tempered by the following language in the Abstention Order: "IT IS FURTHER ORDERED that in the event of a judgment or other recovery by way of settlement, or otherwise, [sic] is obtained in connection with [the state court litigation], such judgments or other recovery, if any, shall be brought before this court for collection against the estate in the case of [Debtor]." The motion for the Abstention Order was apparently unopposed and the Abstention Order itself has never been challenged.[2]

---

1. The Honorable Lisa Hill Fenning is the bankruptcy judge who presided over this case until it was transferred to me in April of 1988.

2. The Abstention Order was signed by United States Bankruptcy Judge Fenning. Bankruptcy Rules 5011 and 9033, however, require that abstention orders regarding adversary proceedings be signed and entered by a district judge after *de novo* review of the report and recommendation submitted by the bankruptcy judge. The Abstention Order does not conform with this requirement. Further, Creditors did not obtain relief from the automatic stay of 11 U.S.C. § 362(a) to litigate their claims against Debtor in state court. At least one court, however, has concluded that an abstention order impliedly grants relief from stay. *Pursifull v. Eakin*, 814 F.2d 1501 (10th Cir.1987).

Armed with the Abstention Order, Creditors pursued their claims in state court against Debtor's estate and many other defendants. Trustee made no response to Creditors' complaints and default was taken. Creditors then obtained default judgments (the "Judgments") against Debtor's bankruptcy estate and other defendants based on *inter alia* violations of federal and state securities laws and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The remedies awarded by the state court in the Judgments included:

1. General damages;
2. Prejudgment interest;
3. Treble damages under RICO (18 U.S.C. § 1964(c));
4. Attorney's fees;
5. Costs;
6. Post judgment interest; and
7. The imposition of a constructive trust upon all the assets of the Debtor.

Trustee did not oppose Creditors' motion seeking default judgments in the state court and did not appeal the Judgments.

Having liquidated their claims, the Creditors were understandably anxious to have them satisfied. Frustrated by the amount of time it was taking Trustee to administer Debtor's estate, Creditors brought a "Motion for an Order: (1) Enforcing Judgment by Collection Against the Estate, and (2) Compelling the Trustee to Distribute Proceeds Pursuant Thereto" (the "Enforcement Motion"). Creditors' argument was simple—(1) The Abstention Order allowed Creditors to liquidate their claims in state court; (2) Creditors obtained the Judgments for damages, ancillary, monetary awards, and for a constructive trust in state court; (3) the Abstention Order required Creditors to enforce the Judgments in the bankruptcy court; (4) I, therefore, should order Trustee to turn over all assets of Debtor's estate to Creditors.

Not surprisingly, Trustee was jolted into action by the Enforcement Motion. Trustee opposed it and argued that the Abstention Order only allowed Creditors to *liquidate* the amounts of their claims in state court and, by its own language, reserved to the Bankruptcy Court decisions regarding the allowability of the Judgments under 11 U.S.C. § 502 and other applicable bankruptcy law. I agreed with Trustee's interpretation of the meaning of the Abstention Order, denied the relief sought in the Enforcement Motion and ordered Trustee to move with alacrity to evaluate and, if appropriate, object to the allowance of all or portions of Creditor's claims.

Trustee brought a motion to disallow portions of Creditors' claims (the "Motion") principally for the following reasons: (1) to the extent that Creditors' claims for pre and post judgment interest were based on interest accrued after the commencement of Debtor's bankruptcy case, they were barred by 11 U.S.C. § 502(b)(2); (2) the claim for RICO treble damages should be disallowed in full by virtue of my equitable powers as embodied in 11 U.S.C. § 105(a) or, in the alternative, subordinated to other general, unsecured claims pursuant to 11 U.S.C. § 726(a)(4); and (3) that portion of the Judgments imposing a constructive trust should be ignored because it went beyond the authority granted in the Abstention Order and because imposition of a constructive trust would cause Creditors to receive an inequitable windfall at the expense of other creditors of the estate who, as a result, would receive little or nothing.

Creditors oppose the Motion arguing *inter alia* that I was bound to give full faith and credit to the Judgments and therefore could not make any order modifying their treatment as claims in this bankruptcy case. A hearing was held on the Motion, I raised issues not addressed by the parties in their initial briefs, additional briefs were presented, and a final hearing was held.

## II

### DISCUSSION OF ISSUES PRESENTED

Many of the objections raised by Trustee were resolved by stipulation between the parties. The following issues are in dispute.

#### A. *Full Faith and Credit*

28 U.S.C. § 1738, commonly known as the "full faith and credit" statute, provides in pertinent part as follows:

"judicial proceedings [of any court of any state of the United States] shall have the same full faith and credit in every court within the United States in its Territories and Possessions as they have by law or usage in the courts as such State, Territory, or Possession from which they are taken."

■ This statute requires federal courts, including bankruptcy courts, to bar relitigation of claims or issues resolved by prior and final judgments rendered by state courts with jurisdiction over parties and subject matter. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4469. The federal court which is presented with a final state court judgment must give it the same preclusive effect that another state court would give to the judgment. *Id.* Thus, a federal court presented with a defense based upon the preclusive effect of a prior state court judgment must look to the law of preclusion of the state in which judgment was rendered. *Marrese v. American Academy of Ortho. Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). If the prior state court judgment would be given preclusive effect by governing state law, the federal court next must inquire whether the federal statute governing the current litigation either expressly or impliedly repeals or creates an exception to the full faith and credit statute. *Marrese,* 470 U.S. at 383, 105 S.Ct. at 1333.

## B. *The Doctrines of Claim and Issue Preclusion*

■ The term "res judicata" is often used to describe generally all aspects of preclusion law. It is more accurately applied to the doctrine which holds that once a claim is fully litigated between certain parties and "merged" into a final judgment, those same parties are barred from relitigating that claim. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Wright, Miller & Cooper, Federal Practice and Procedure § 4402, Footnotes 1 and 2 and cases cited therein; Restatement (Second) of Judgments § 19 (1980); 1B Moore's Federal Practice ¶ 0.405[1], pp. 178–80 (1988). To

avoid semantic confusion, in this opinion I will refer to this doctrine as "claim preclusion."

■ The other type of preclusive effect a final judgment can have in subsequent litigation is often described as "collateral estoppel." The doctrine of collateral estoppel recognizes that if an issue in a claim is actually litigated to final judgment by certain parties and was necessary to the rendering of that judgment, then those same parties are barred from relitigating that issue in subsequent litigation even if different claims are involved. This second doctrine is most accurately described as "issue preclusion" and I will use that term in this opinion. Wright, Miller & Cooper, Federal Practice and Procedure, § 4402, footnotes 1 and 2; Restatement (Second) of Judgments § 27 (1980); 1B Moore's Federal Practice ¶ 0.405[1], pp. 178–80 (1988).

## C. *Jurisdiction Over Liquidation and Allowance of Claims in Bankruptcy*

Trustee argues that the liquidation and allowance of claims against a bankruptcy estate constitutes a dispute within the exclusive jurisdiction of this court. As a result, the only source of jurisdiction for the state court who rendered the Judgments is the Abstention Order. The Abstention Order specifically provides that the state court could adjudicate the *liquidation* of Creditors' claims as to liability and amount, but not the *allowability* of these claims. Therefore to the extent that the Judgments address issues of allowability, the state court that rendered them was without jurisdiction and the affected portions of the Judgments are void and not entitled to claim or issue preclusion effect under California law. If Trustee's argument is correct, the Judgments do not meet the first part of the *Marrese* test and thus are not entitled to full faith and credit.

Evaluation of Trustee's argument requires immersion into the unsettled and potentially hazardous waters of bankruptcy jurisdiction. I will attempt to make the excursion brief yet thorough.

Through 28 U.S.C. § 1334(d), Congress has placed exclusive jurisdiction over property of bankruptcy estates in United States District Courts. Congress has authorized district courts to refer this *in rem* jurisdiction, as well as the subject matter jurisdiction granted by Congress in 28 U.S.C. § 1334(a), to United States Bankruptcy Courts. 28 U.S.C. § 157(a). Accordingly, the United States District Court for the Central District of California has referred all bankruptcy cases and adversary proceedings and matters within those cases to the United States Bankruptcy Court of this district by General Order No. 266, dated October 9, 1984. The final pertinent aspect of this statutory scheme of jurisdiction is subsection (b) of 28 U.S.C. § 157 which provides that bankruptcy judges may hear, determine and enter final orders with regard to all proceedings that are at the core of the bankruptcy system. Congress expressly includes the allowance or disallowance of claims against the estates in its list of core proceedings. 28 U.S.C. § 157(b)(2)(B).

The jurisdictional relationship between property of a bankruptcy estate and claims against the bankruptcy estate may be obvious, but should be elucidated. Claims against the estate can only be satisfied out of property of the estate. Each creditor who holds a claim against the bankruptcy estate is entitled to an equitably proportional or *pro rata* share of property of the estate *vis-a-vis* similarly situated creditors in the creditors' class. The priority of distribution to each class is determined by statute. *See, e.g.,* 11 U.S.C. § 726.

This equitable sharing of the estate among creditors of the estate is in marked contrast to the treatment of claims outside of bankruptcy. Unless or until a debtor commences a bankruptcy case, its creditors are free to rush to the courthouse, obtain judgments and satisfy their claims ahead of all other creditors of the debtor.

Only the court that has exclusive *in rem* jurisdiction over the property of the bankruptcy estate can ensure the equitable distribution of that property to creditors of the estate. If the liquidation and allowance of bankruptcy claims were permitted in the courts of creditors' choosing, conflicting judgments would arise, the estate's resources would be drained in defending many and far flung civil actions, and the goal of efficient and equitable distribution of estate property to creditors according to the priority scheme enacted by Congress would never be met.

 That bankruptcy courts have exclusive jurisdiction over the liquidation and allowance of bankruptcy claims is a principle long recognized and not reasonably disputed. *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Katchen v. Landy,* 382 U.S. 323, 328–330, 86 S.Ct. 467, 471–473, 15 L.Ed.2d 391 (1966); *Granfinanciera, S.A. et al., v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 2798–2799, 106 L.Ed.2d 26 (1989). These authorities also make it clear that disputes over the liquidation and allowance of claims are actions sounding in equity and not at law. *Id.*

### D. *Liquidation v. Allowance*

It is important to understand that Trustee does not argue that no portion of the Judgments is entitled to full faith and credit. Rather, Trustee concedes that the Judgments are entitled to full faith and credit insofar as they establish Debtor's liability to the Creditors and the amount of damages to which Creditors are entitled; subject, however, to certain limits on the allowability of these damages imposed by the Bankruptcy Code.

 In certain limited circumstances it makes sense to liquidate bankruptcy claims in non-bankruptcy courts to avoid duplicative litigation, to prevent waste of scant federal judicial resources, or to allow a court of special expertise to resolve a dispute within its purview. *See, e.g., In re MacDonald,* 755 F.2d 715 (9th Cir.1985) (relief from stay granted to avoid incursion into family law matters "out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters"); *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982) (relief from stay to liquidate

claims but not to enforce judgment. Allowing pending state court action to proceed merely determined debtor's liability in relation to other creditors); *In re Borbridge*, 81 B.R. 332 (Bankr.E.D.Pa.1988) (relief from stay because the matter in dispute would be resolved more economically, conveniently, and quickly in nonbankruptcy forum); *In re McGraw*, 18 B.R. 140 (Bankr.W.D.Wis.1982) (relief from stay to permit continuation of creditors' civil suit against debtor, where creditors agreed not to seek enforcement of any judgment award against the debtor but sought recovery of debtor's former employer's insurance company).

In this case, Judge Fenning apparently concluded that it was most efficient to allow the state court to hear identical claims against multiple defendants, including nonbankruptcy debtor defendants. This conclusion is sound as it is at least questionable whether this court has jurisdiction to resolve disputes between non-debtor parties. *Wayne Film Systems v. Film Recovery Systems*, 64 B.R. 45 (Bankr.N.D.Ill. 1986). It is usually best to resolve disputes between multiple parties arising out of the same nexus of facts in one court. Trustee does not dispute the propriety of liquidating common claims against this estate and nondebtor codefendants.

Trustee does argue, however, that although Creditors' claims for certain damages have now been merged into the Judgments and fixed in amount, that the doctrines of claim preclusion and issue preclusion do not bar Trustee from asserting that these liquidated claims should be disallowed or subordinated pursuant to provisions of the Bankruptcy Code. Trustee implies that the success of his assertion rests upon the presumed distinction between the liquidation of bankruptcy claims and their allowance or disallowance.

This distinction is not expressed in 11 U.S.C. § 502, the statute that is the cornerstone of the claims process in bankruptcy. Indeed, § 502(b)(1) excepts from allowance those claims that are unenforceable "under any agreement or applicable law." Read alone, this subsection appears to treat the liquidation of a claim, i.e., the determination of liability and the fixing of the amount of monetary damages that result under non-bankruptcy law, as a part of the allowance/disallowance process.

Prior to the enactment of the Bankruptcy Code in 1978, this distinction, or one similar to it, was expressly embodied in the Bankruptcy Act of 1898 (the "Act"). Under the Act, claims were treated very differently depending upon whether they were "provable" or not. The "provability" analysis was related to, but independent of, the determination of whether the claim was allowable. *See* §§ 57 and 63 of the Act; Henderson, Remington on Bankruptcy, §§ 761–762 (1956). Fortunately the concept of "provability" has been superceded, along with the Act, by the enactment of the Bankruptcy Code.

Nevertheless, one can find some support for Trustee's asserted distinction in current statutory language. For example, 11 U.S.C. § 502(c) allows the bankruptcy court to estimate for the purpose of *allowance* "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." Additionally, 28 U.S.C. § 157(b)(2)(B) states that bankruptcy judges may hear and determine as core proceedings the allowance or disallowance of claims against the estate "but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under Title 11."

In these two statutes, Congress appears to use the words "liquidation" and "allowance" to describe two different procedures or concepts. Another possible construction is that these two terms are referring to the same process, i.e., that of determining a creditor's share of the bankruptcy estate's property, and the use of these two different words was merely inadvertent. A third possibility, the one I find most reasonable, is that "liquidation" is merely one step in the allowance process.

In many cases, this step is taken prior to the commencement of the bankruptcy case.

If the claim is liquidated or not prior to the commencement of the case, the creditor may file a proof of claim in the case, 11 U.S.C. § 501, and if filed properly, the claim is deemed allowed. *Id.* Any party in interest, although usually it is the debtor, debtor-in-possession or trustee, may object to the filed claim. 11 U.S.C. § 502(a). The bankruptcy court may then liquidate the claim if it is unliquidated, i.e., determine the merits of the claim according to applicable state law or agreement between the parties, abstain from liquidating the claim or give relief from stay to the claimant to liquidate the claim in state court;[3] or, if the claim is complex or will unnecessarily delay the administration of the bankruptcy estate, the bankruptcy court may forego formal liquidation and *estimate* the claim. 11 U.S.C. § 502(c). Once liquidated or estimated, the claim is ripe for determination of its allowance or disallowance pursuant to many and diverse provisions of the Bankruptcy Code.

Trustee argues, with no supporting authority, that portions of the Judgments are not entitled to full faith and credit because the Abstention Order granted jurisdiction to the state court to liquidate Creditors' claims but not to determine their allowance. I agree with Trustee's conclusion, but not because I conclude there is a definitive distinction between the liquidation and allowance of claims under current bankruptcy law. My conclusion is based instead upon the definition of the term "claim" in the context of claim preclusion jurisprudence.[4]

■ Under the doctrine of issue preclusion, a party is barred from raising an issue in subsequent litigation if it was *actually* litigated in a prior action between the same parties. Creditors have not asserted, and the Judgments do not reflect, that any of the objections raised by Trustee in the Motion were actually litigated in state court. Further, the Judgments were taken by default and thus the doctrine of issue preclusion does not apply. *In re Day,* 4 B.R. 750, 755, n. 4 (Bankr.S.D.Oh. 1980), and authorities cited therein. Therefore Creditors cannot rely upon the doctrine of issue preclusion.

Instead Creditors appear to rely upon claim preclusion. Under this doctrine, if a final judgment has been entered on a claim for relief in prior litigation, no party may subsequently litigate issues which could have been raised in that adjudicated claim even if they were not actually litigated in the first instance. The crucial determination in applying this doctrine is whether the matter raised in the subsequent litigation was an "issue" within the previously litigated claim or an independent "claim" that was not litigated or could not have been litigated.

For the reasons set forth in Section E below, I conclude that the Motion raises "claims" independent from those resolved by the state court in the Judgments and therefore Trustee is not barred from raising them in this court.

### E. *Application of Claim Preclusion Law to the Judgments*

■ The two policies behind the doctrines of claim and issue preclusion are (1) to protect litigants from the inequitable burden of relitigating the same matters with the same parties and; (2) to preserve precious judicial resources. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). These policies are not so important, however, as to always preclude the consideration of other, equally important policies. Thus courts have often limited the application of preclusion doctrines to avoid an unjust result. *See, Federated Dept. Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); 1B Moore's Federal Practice ¶ 0.405[11] pp. 258–259 (1988); Wright, Miller & Cooper, *supra,* §§ 4411–4414.

---

**3.** *See* cases cited above in Section II, D of this opinion.

**4.** *See,* Wright, Miller & Cooper, *supra,* § 4407 for a complete discussion of the terminology of preclusion law and specifically what constitutes a "claim." 1B Moore's, *Federal Practice,* ¶ 0.410[1] pp. 348–351 (1988); Restatement (Second) of Judgments § 24 (1980).

In this dispute, Creditors argue that Trustee had full notice of the proceedings in state court and had an adequate opportunity to assert any and all claims in state court, including so called "allowability" claims asserted in the Motion. In support of this argument the creditors cite *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

In *Heiser*, a creditor took a default judgment against the bankrupt prior to the commencement of his bankruptcy case. The bankrupt challenged the judgment due to lack of adequate notice, but the challenge was defeated. After the commencement of the bankrupt's bankruptcy case, the trustee in the bankruptcy case renewed the challenge on the same grounds. The trustee was also defeated. Ever persistent, the trustee renewed his attempt to undo the creditor's judgment in the bankruptcy case. The District Court accepted the trustee's argument, rejected the creditor's assertion of claim preclusion and therefore concluded that it could utilize its equitable powers to inquire into the validity of the creditor's judgment.

The Supreme Court disagreed. The Court concluded that the trustee was barred by the doctrine of claim preclusion from relitigating the claims which he himself had previously litigated. In reaching its conclusion the *Heiser* court distinguished its own opinion in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The *Heiser* court noted that in *Pepper v. Litton*, the bankruptcy trustee was not bound by the doctrines of claim or issue preclusion because the trustee was raising, for the first time, the assertion that an insider's claim should be disallowed or subordinated to the claims of other creditors of the bankruptcy estate so that an equitable distribution of property of the estate could be achieved. In other words, the claim raised by the trustee in *Pepper v. Litton* was one that could not be raised in a non-bankruptcy court, i.e., a court that did not have exclusive jurisdiction over property of the bankruptcy estate and the claims against it.

The facts in the dispute before me are more similar to those considered by the Court in *Pepper v. Litton* than in *Heiser*. Trustee in this case is not attempting to relitigate claims or issues decided by the Judgments with regards to securities trading law violations or violations of RICO. Rather, Trustee is asserting claims concerning the allowability of the Judgments that were not asserted in state court and which may be asserted only in this court.

In many cases creditors' claims are liquidated prior to the commencement of a bankruptcy case. In such cases, it is impossible for a non-bankruptcy court to consider claims based upon the allowability provisions of the Bankruptcy Code before a bankruptcy case is commenced. The only reason Creditors have an opportunity to make their argument in this case is because they obtained the Abstention Order and were able to convince the state court that rendered the Judgments that the Abstention Order enabled that court to rule upon matters that were clearly not contemplated by the bankruptcy court when it entered the Abstention Order, e.g., the imposition of a constructive trust upon the assets of this bankruptcy estate.

This is not to say that the doctrines of claim and issue preclusion never bind a bankruptcy court in its determination of claims against the bankruptcy estate. In many instances a trustee or debtor in possession will be bound. *See, e.g., Heiser v. Woodruff, supra; cf., In re Comer*, 723 F.2d 737 (9th Cir.1984) (bankruptcy court barred by doctrine of claim preclusion from looking behind state court default judgment for unpaid alimony and child support in determining actual amount of obligation). Under the doctrine of claim preclusion, however, subsequent litigation of a claim is barred only if that particular claim was actually litigated. I conclude that Trustee's objections are "claims," as that term is used in res judicata jurisprudence, that were not litigated and thus not merged into the Judgments.

This issue is rarely raised in bankruptcy court because in almost all cases such allowability claims are chronologically impos-

sible to be asserted, i.e., when the creditor liquidates its claims prior to the commencement of the bankruptcy case. *Cf., Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In unusual cases such as the one before me, although it is chronologically possible for the state court to have considered the allowability claims raised by Trustee in the Motion, the state court did not have the jurisdiction to hear them because of the limiting language in the Abstention Order (*See,* section I above).

 Apart from the limited grant of the Abstention Order, it is practicably impossible for courts other than the bankruptcy court, which has exclusive *in rem* jurisdiction over property of the estate, to rule upon allowability, the purpose of which is to insure equitable distribution of property of the bankruptcy estate to all of the estate's creditors. *See,* Section II, C above. Thus I conclude that a bankruptcy court or district court resolving disputes over the allowance, disallowance or subordination of claims can never be bound by the prior judgment of another court except to the extent it is an initial determination of the nature of the claim and the amount of the resulting damages under non-bankruptcy law. Any decision regarding the satisfaction or treatment of such liquidated claims under bankruptcy law are within the exclusive *in rem* jurisdiction of federal courts presiding over the subject bankruptcy case.

I will now apply this analytical framework to the contested objections of Trustee.

F. *Imposition of Constructive Trust*

 The constructive trust imposed by the Judgments is not entitled to full faith and credit for two reasons. First, the state court that rendered the Judgments did not have jurisdiction over property of Debtor's estate sufficient to enable it to impose the equitable remedy of a constructive trust upon all the assets of Debtor's bankruptcy estate.

Under the first part of the *Marrese* test, a federal court must accord claim preclusion effect to a prior state court judgment

if the prior state court judgment would be accorded that treatment by a state court in the state in which it sits. 470 U.S. at 380, 105 S.Ct. at 1331. Under California law a judgment is not entitled to claim preclusion effect if the court rendering the judgment did not have subject matter jurisdiction. *Armstrong v. Armstrong,* 15 Cal.3d 942, 126 Cal.Rptr. 805, 544 P.2d 941 (1976), *Scoville v. Keglor,* 29 Cal.App.2d 66, 84, 84 P.2d 212 (1938). The only jurisdiction that the state court that rendered the Judgments had was that released by this court in the Abstention Order. The Abstention Order specifically and clearly limited Creditors to liquidating their claims as to liability and amount. The Abstention Order expressly reserved to the bankruptcy court the power to enforce any claim liquidated by the state court.

 The imposition of a constructive trust is not a claim for relief. Rather it is an equitable remedy. *In re North American Coin & Currency, LTD.,* 767 F.2d 1573 (9th Cir.1985), *cert. denied* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). Moreover, it is a remedy designed to *equitably* distribute property or monies taken by force or fraud. *Id.,* at 1575. The imposition of a constructive trust in favor of one small group of creditors, thereby depriving thousands of other creditors from a *pro rata* recovery from debtor's bankruptcy estate, can hardly be described as equitable. Therefore, under the *Marrese* test, that portion of the Judgments imposing a constructive trust on property of Debtor's bankruptcy estate is void and not entitled to full faith and credit.

 Second, even if the state court that rendered the Judgments had jurisdiction to determine an appropriate remedy for Creditors, I conclude that I would still have the equitable power accorded to every bankruptcy court to avoid that constructive trust, first, because Creditors have failed to trace their property into the commingled assets of this estate, and second, because such trusts are disfavored in bankruptcy as they disrupt the equitable distribution of

estate property to all creditors. *North American Coin, supra,* 767 F.2d at 1575.

### G. *Prejudgment Interest*

 11 U.S.C. § 502(b)(2) provides that no claim shall be allowed for unmatured interest. This means that it is inappropriate to allow an unsecured creditor payment of postpetition interest on an unsecured prepetition claim. *Thompson v. Kentucky Lumber Co.,* 860 F.2d 674 (6th Cir.1988). The only time such interest is allowable is if the estate is a surplus estate, meaning that there is enough money to pay all claims and still return money or property to the debtor. Trustee averred that it is highly unlikely that this estate will be a surplus one. Creditors submitted no evidence to the contrary. In the event that this estate produces a surplus Creditors' claim for interest accruing after the commencement of this bankruptcy case will be allowed but subordinated pursuant 11 U.S.C. § 726(a)(5). Such an allowance, of course, would be made on a pro-rata basis with other similarly situated creditors.

### H. *Treble Damages*

 Creditors were awarded treble damages by the state court rendering the Judgments pursuant to 18 U.S.C. § 1964(c). Trustee argues that these treble damages should be disallowed completely or an inequitable result will occur. Trustee suggests that I have the power to do so under 11 U.S.C. § 105. If this argument fails, Trustee claims that the treble damages awarded Creditors fall within 11 U.S.C. § 726(a)(4) which requires that any claims described therein be subordinated in payment to other allowed unsecured claims. That subsection provides in pertinent in part:

> Any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for *multiple,* exemplary, or *punitive damages,* arising before the earlier of the order for relief for the appointment of a trustee, *to the extent that such fine,* penalty, forfeiture, or *damages are not compensation for ac-*

*tual pecuniary loss* suffered by the holder of such claim. (Emphasis added)

### 1. *Section 726(a)(4)*

Trustee and Creditors each cited many cases in an attempt to convince me that RICO treble damages are or are not punitive damages within the meaning of 11 U.S.C. § 726(a)(4), as this issue has apparently not been decided by any court. I do not need to make this determination as it is clear from the plain language of 11 U.S.C. § 726(a)(4) that RICO treble damages are *multiple* damages that arose from pre-petition claims. Although Creditors argued strenuously that RICO treble damages were designed to compensate the victims of fraud such as Creditors for actual losses, Creditors submitted no evidence supporting this assertion either with their proofs of claim or their responses to the Motion. Further, it runs counter to common sense to find that the tripling of damages is *per se* intended to compensate for actual loss. Rather, it appears designed to punish wrongdoers and warn others not to engage in similar activities. Therefore I conclude that the RICO treble damages portion of Creditors' claims should be subordinated pursuant 11 U.S.C. § 726(a)(4).

### 2. *Section 105*

 Trustee's request that Creditors' claims for RICO treble damages be disallowed entirely makes no sense. 11 U.S.C. § 105 provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

As § 726(a)(4) specifically provides for the *subordination* of such claims, I do not see how disallowing such claims is necessary or appropriate to carry out provisions of Title 11 in this case. I might reach a different conclusion if this case were under Chapter 11 and § 726 were not applicable. *See, In re A.H. Robins Co., Inc.,* 89 B.R. 555 (Bankr.E.D.Va.1988).

III

## CONCLUSION

The foregoing constitutes my findings of fact and conclusions of law. A separate order consistent with these findings and conclusions shall be entered.