Robert **HAPHEY** and Carl J. Bondietti, Plaintiffs–Appellants,

v.

**LINN COUNTY; Linn County Sheriff's Office; Art Martinak, Sheriff, acting in his official and individual capacity, Defendants–Appellees.**

No. 90–35226.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided Feb. 5, 1991.

---

Robert D. Durham, Barbara J. Diamond, Bennett & Durham, Portland, Or., for plaintiffs-appellants.

Lisa E. Lear, I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendants-appellees.

Before WRIGHT, CHOY and THOMPSON, Circuit Judges.

CHOY, Circuit Judge:

## I. Factual and Procedural Background

Robert Haphey (Haphey) and Carl Bondietti (Bondietti) were employed by the Linn County Sheriff's Office (Linn County) as deputy sheriffs. Both were laid off in May 1986. Haphey and Bondietti applied for *recall* by submitting letters to the Sheriff of Linn County (Sheriff) in October 1986. Haphey and Bondietti submitted applications for *new hire* in January 1988.

From May 1986 through the Fall of 1988 the Sheriff hired or rehired about two dozen deputies. On November 25, 1987, Haphey and Bondietti filed unfair labor practice charges with the Oregon State Employment Relations Board (ERB). They claimed that they were not recalled or hired

because of their union activities. On May 31, 1989, after the hearing in the ERB proceeding but before a final decision was rendered, Haphey and Bondietti filed an action in United States district court under 42 U.S.C. § 1983 for violation of their free speech rights and a pendent state law claim for breach of contract.

On September 11, 1989, the ERB ruled that Haphey and Bondietti's claim that they were not *recalled* for discriminatory reasons was untimely, but found that Haphey and Bondietti had not been *hired* because they had engaged in activities protected by Oregon statute. The ERB ordered the Sheriff to offer Haphey and Bondietti reinstatement and back pay from January 1988 and assessed a civil penalty of $500 against the Sheriff. In a later order, the ERB granted Haphey and Bondietti $6,500 in attorney's fees. Linn County declined to appeal the ERB's decisions and complied with the orders.

Back in district court, Linn County moved for summary judgment on the ground that Haphey and Bondietti were precluded from pursuing their section 1983 claim because of the relief they had sought and received in the ERB proceeding. Haphey and Bondietti moved for partial summary judgment on the ground that the ERB proceeding barred Linn County from litigating the issue of liability. The district court granted Linn County's motion and thus found Haphey and Bondietti's motion moot. *Haphey v. Linn County*, 731 F.Supp. 410 (D.Or.1990). In light of its decision on Haphey and Bondietti's federal claim, the district court declined to retain jurisdiction over the pendent state claim for breach of contract.[1] *Id.*

Haphey and Bondietti appeal the decision of the district court granting Linn County's motion for summary judgment.[2] Haphey and Bondietti emphasize that they could not bring the section 1983 action in the ERB proceeding and that under section 1983 general compensatory and punitive damages are available which are not available through the ERB proceeding. The record in this case does not clearly establish the jurisdictional scope of the ERB and the nature of the relief it may grant. The trial court's decision assumed that Haphey and Bondietti could not bring their section 1983 claim in the ERB proceeding and that the relief available in a section 1983 proceeding in federal court is greater than that available in the ERB proceeding.[3]

## II. Standard of Review

A grant of summary judgment is reviewed de novo. The evidence is viewed in the light most favorable to the nonmoving party to determine if there are any genuine issues of material fact. We must also determine whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## III. Discussion

█ This case requires us to determine whether a judgment obtained from one tribunal prevents a plaintiff from seeking an additional award from another tribunal. Normally we would decide such a question under the doctrine of claim preclusion, a subcategory of the doctrine of res judicata.

---

1. The district court has significant discretion in exercising pendent jurisdiction over state law claims. *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir.1989) (following dismissal of federal claim, district court properly dismissed state claims).

   Haphey and Bondietti appeal the district court's dismissal of their state claims solely on the ground that their federal claim was improperly dismissed. Since we affirm the district court's dismissal of the federal claim, we find no error in its dismissal of the state law claims.

2. This appeal concerns Haphey and Bondietti's right to bring suit in federal court under section 1983. Regardless of the disposition of this appeal, they will not have prevailed on their claim that their civil rights were violated. Any claim for attorney's fees under 42 U.S.C. § 1988 is not proper at this time.

3. It appears that the only difference in the relief available under section 1983 and the relief available in the ERB proceeding is that while there is no limit on punitive damages under section 1983, the ERB may only impose a maximum civil fine of $1000.00. Or.Rev.Stat. § 243.676(2)(c), (4) (1989).

Thus an understanding of how res judicata principles apply to section 1983 actions provides the necessary background for resolution of this case. However, because of the unusual development of the law in this circuit, we are constrained to resolve this case under the somewhat obscure doctrine of "election of remedies."

### A. Res Judicata

Res judicata consists of two related concepts, claim preclusion and issue preclusion. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). The doctrine of claim preclusion "'treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." ... [T]he effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.'" 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4402 (1981) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir.1978)).

Issue preclusion "recognizes that suits addressed to particular claims may present issues relevant to suits on other claims.... [This doctrine] bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." *Id.* The difference between an issue and a claim is often one of degree and emphasis. *Id.*

The doctrine of res judicata, as applied to a federal court's consideration of a suit brought under section 1983 subsequent to a judgment by a state authority on some part of the underlying controversy, is divided into four categories. *University of Tennessee v. Elliott*, 478 U.S. 788, 796–99, 106 S.Ct. 3220, 3224–26, 92 L.Ed.2d 635 (1986). First, with respect to *issue*

*preclusion*, where the judgment is rendered by a *state court*, the state judgment is given the same issue preclusive effect in federal court as it would have in the courts of the rendering state. *Allen v. McCurry*, 449 U.S. 90, 102–05, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308 (1980). Thus *state rules* of issue preclusion control. Likewise, where the judgment is rendered by a *state court*, state rules of *claim preclusion* control. *Migra*, 465 U.S. at 85, 104 S.Ct. at 898. Where the judgment is rendered by a *state administrative body*, state rules of *issue preclusion* also control, provided the "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate...." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).[4] Finally, neither this circuit nor the Supreme Court has decided whether state or federal rules of *claim preclusion* apply where the judgment is rendered by a *state administrative body*. The Fifth Circuit has recognized and declined to decide the issue, *Frazier v. King*, 873 F.2d 820 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 502, 107 L.Ed.2d 504 (1989), and the Eleventh Circuit has decided that federal claim preclusion law controls, *Gjellum v. City of Birmingham*, 829 F.2d 1056 (11th Cir.1987).

The case before us involves the claim preclusive effects of an unreviewed decision by a state administrative agency.[5] Thus, if we were deciding this case under a res judicata analysis we would address three issues: whether state or federal law applies, the claim preclusive effects of an unreviewed administrative decision under Oregon law with respect to a subsequent section 1983 action, and the claim preclusive effects of an unreviewed administrative decision under federal law with respect to a subsequent section 1983 action. How-

---

**4.** While the general rule is that state law is determinative in the three categories of res judicata analysis outlined above, this rule is subject to the requirement that the first adjudication meet certain minimum federal standards. *See generally, Gjellum v. City of Birmingham*, 829

F.2d 1056, 1063–64 (11th Cir.1987) (reviewing federal standards).

**5.** Haphey and Bondietti's motion for summary judgment, which the district court found moot, raised the question of issue preclusion. The denial of that motion is not before this court.

ever, because we find that this case is controlled by this court's decision in *Punton v. City of Seattle*, 805 F.2d 1378 (9th Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987), under the doctrine of election of remedies, we do not address these important res judicata issues.

### B. The Punton Decision

Punton, an officer of the Seattle Police Department, was dismissed from his job. Shortly after his dismissal, Punton filed an appeal with the Seattle Public Safety Civil Service Commission arguing that the Police Department's failure to provide a pre-termination hearing rendered his discharge constitutionally invalid. The commission did not reach the constitutional question. Believing its jurisdiction to be confined to the determination of whether the discharge was in good faith, the commission affirmed the dismissal. Punton then sought a writ of certiorari in Washington Superior Court. *Id.*

The superior court concluded that dismissal without a hearing violated Punton's state and federal due process rights. Punton did not seek general damages. The court ordered Punton's reinstatement with back pay and awarded attorneys' fees. The commission appealed from the superior court to the Washington Court of Appeals. The court of appeals affirmed Punton's reinstatement agreeing that there had been a due process violation. However, it reversed the award of attorneys' fees because proceedings pursuant to a writ of certiorari are limited in scope and may only secure the rendition of the judgment which should have been entered by the lower tribunal. Since the commission lacked authority to award attorneys' fees, the superior court could not award attorneys' fees. *Id.* Thus the court of appeals' decision is best read as holding that the Seattle Public Safety Civil Service Commission could properly consider Punton's claim that his due process rights had been violated but could not award attorneys' fees for this claim and that this jurisdictional and remedial structure also confined a court reviewing the commission's decision pursuant to a writ of certiorari. *See Punton v. City of*

*Seattle Public Safety Comm'n*, 32 Wash. App. 959, 650 P.2d 1138 (Wash.Ct.App. 1982), *cert. denied*, 98 Wash.2d 1014 (Wash.1983).

While waiting for the decision of the Washington Court of Appeals, Punton filed an action in federal district court under 42 U.S.C. § 1983 for violation of his due process rights, seeking damages for emotional distress and attorneys' fees. After the decision of the Washington Court of Appeals, Punton moved for partial summary judgment in federal court on the ground of issue preclusion claiming that all that remained to be adjudicated was damages. The commission moved for summary judgment on the ground of claim preclusion. The district court granted Punton's motion and a jury subsequently awarded Punton $150,000 for mental suffering. The court added an award of $15,000 in attorneys' fees. *Punton*, 805 F.2d at 1380.

On appeal this court reversed. Judge Goodwin, writing the majority opinion, initially noted that state rules of claim preclusion determine the claim preclusive effect of a state court judgment in federal court. *Id.* Judge Goodwin then framed the "crucial question" of the case as whether "Punton, who after losing his job, obtained the incidental relief afforded by the law that created his job, is now entitled to additional relief in federal court under § 1983, for damages not available in state court under the type of procedure that he chose to follow." *Id.* Judge Goodwin's opinion, *without reference to Washington claim preclusion law*, went on to clearly state that "Punton's election to proceed initially in the state court amounted to a splitting of his cause of action as well as an election of remedies." *Id.* at 1381. In conclusion, Judge Goodwin noted that he had "found no Supreme Court case holding that merely because litigation strategy and the perceived advantages of a more adequate award in federal court make it an attractive alternative, a person aggrieved by official state action can abandon a remedy that colorably satisfies due process of law in the state court after recovering substantially what he has lost." *Id.* at 1383.

Judge Norris, dissenting in *Punton*, read the majority opinion as deciding Punton's claim on the merits "without determining the preclusive effect of the *contrary* state court judgment." *Id.* (emphasis added). If Judge Norris' reading is correct, Judge Goodwin's *Punton* opinion must be read as finding that Punton's due process rights were not violated, a finding which directly contradicts the prior state court holding that a due process violation had occurred. A more plausible reading of Judge Goodwin's opinion is that the doctrines of splitting a cause of action and election of remedies as a matter *federal law* (not state law) prevented Punton from bringing his section 1983 action in federal court.

If Judge Goodwin's opinion is to square with Supreme Court res judicata decisions, either the doctrine of splitting a cause of action or the doctrine of election of remedies must be separate from res judicata because the Supreme Court has clearly held that state rules of claim and issue preclusion control a section 1983 action brought in federal court with respect to state court judgments.[6] *See supra* Section III(A); *Haphey v. Linn County,* 731 F.Supp. 410, 414 (D.Or.1990) ("... *Punton* ... discuss[es] the rule against claim splitting as a doctrine which is separate from the doctrine of res judicata"). Our inquiry, therefore, is to determine if the doctrines of splitting a cause of action and election of remedies are separate from the doctrine of res judicata.

### 1. *Splitting a Cause of Action*

▮ The doctrine against splitting a single cause of action refers to the compulsion to pursue in one action all the theories and remedies which might be appropriate to a grievance. However, the rule against splitting a cause of action has no teeth to it

apart from the doctrine of claim preclusion. A plaintiff may split his cause of action in an initial suit and this initial suit may be reduced to judgment without infirmity. In a subsequent suit, however, the plaintiff is prevented by the doctrine of claim preclusion from raising any item of damage or ground of recovery that was a "part" of the first cause of action. F. James & G. Hazard, *Civil Procedure* § 11.7 (3d ed. 1985); 6A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1582 (2d ed.1990). Thus the doctrines against splitting a cause of action and claim preclusion do not appear to be distinct, but rather two sides of the same coin.

To the extent that the *Punton* decision is based on the doctrine of splitting a cause of action, it is in direct conflict with the Supreme Court's decision that state claim preclusion rules determine the claim preclusive effect of a state judgment in a section 1983 action in federal court. *See Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984) (state claim preclusion rules control); *Braley v. City of Pontiac,* 906 F.2d 220, 224 (6th Cir.1990) (reading *Punton* as a claim preclusion decision). Consequently, *Punton's* reasoning based on splitting a cause of action does not provide a sound basis for deciding the case at bar.

### 2. *Election of Remedies*

▮ An election of remedies is the "choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts." 25 Am.Jur.2d *Election of Remedies* § 1 (1966). Three essential elements must exist before the doctrine will be applied. First, two or more remedies must exist.[7] Second, the remedies must be in-

---

**6.** Judge Goodwin's opinion is written without dependence on state law. However, it initially recognized that state law determined the claim preclusive effects of a state court judgment in the case before that panel. Thus the opinion implicitly holds that the doctrines of splitting a cause of action and election of remedies are distinct from res judicata.

**7.** This factor explains to some degree *Punton's* emphasis on the nature of the remedy the plain-

tiff received in the state proceeding. Often this first element will not be found to exist where the plaintiff merely thought he had a remedy, but on pursuing that remedy found that no remedy was in fact available. 25 Am.Jur.2d *Election of Remedies* § 9 (1966). *See also, Clark v. United States,* 19 Cl.Ct. 220 (1990) (congressional intent that must elect between tort *recovery* (not just suit) which must be pursued in district court and taking recovery which must

consistent.[8] Third, one remedy must be chosen. *Id.* at § 8. The doctrine of election of remedies prevents a plaintiff who obtained one remedy from pursuing another inconsistent remedy. *See Wynfield Inns v. Edward LeRoux Group, Inc.*, 896 F.2d 483, 488 (11th Cir.1990) (plaintiff may not collect a judgment based on reliance theory after electing restitution damages). Since the adoption of the Federal Rules of Civil Procedure, the doctrine of election of remedies applies only after a judgment on one of the causes of action is entered. *Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1317 (9th Cir.1986).

■ The doctrines of election of remedies and res judicata are distinct.[9] 25 Am. Jur.2d *Election of Remedies* § 6 (1966); 28 C.J.S. *Election of Remedies* § 1(b) (1941). Several differences exist in the theoretical bases of the doctrines. The doctrine of election of remedies often implements a substantive policy decision that if one remedy is had another may not be simply because one is deemed sufficient. Indeed, election of remedies is often legislatively prescribed. *See Clark v. United States*, 19 Cl.Ct. 220 (1990) (congressional intent that must elect between tort recovery and taking recovery); *Weiss v. International Brotherhood of Electrical Workers*, 729 F.Supp. 144 (D.D.C.1990) (statute prevents plaintiff from suing in federal court after pursuing administrative remedy). The doctrine of res judicata, on the other hand, is motivated primarily by the interests of avoiding repetitive litigation, conserving ju-

dicial resources, and preventing the moral force of court judgments from being undermined. *University of Tennessee v. Elliott*, 478 U.S. 788, 798, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986); F. James & G. Hazard *Civil Procedure* § 11.2 (3d ed.1985). In addition, the concept of waiver is a primary theoretical justification for the doctrine of election of remedies. 25 Am.Jur.2d *Election of Remedies* § 2 (1966). Thus the doctrine of election of remedies rests heavily on the moral premise that it is fair to hold people responsible for their choices. While this moral premise also appears to underlie the doctrine of res judicata, the primary justification for res judicata is found in the broad public policy principles outlined above.

Because the doctrine of election of remedies is distinct from the doctrine of res judicata, the *Punton* decision does not directly conflict with Supreme Court jurisprudence. We turn to an application of *Punton* to the case at bar.

### 3. The Similarity of Punton

On reading *Punton* one is immediately struck by the remarkable similarity of its facts to those of the case before this panel. Both cases involve discharged law enforcement officers who brought actions before state administrative agencies with limited remedial power. In both cases the officers obtained reinstatement and back pay. In the case at bar Haphey and Bondietti also obtained attorney's fees, thus obtaining even more relief than the plaintiff in *Pun-*

---

be pursued in claims court). However *Punton's* emphasis on the substantiality of the relief the plaintiff recovered exceeds traditional election of remedies rationales.

**8.** In the early development of this doctrine the element of inconsistency meant that the pursuit of one remedy must require the plaintiff to allege facts that were inconsistent with the facts the plaintiff must allege to recover under another theory. 25 Am.Jur.2d *Election of Remedies* § 12 (1966). However, the doctrine is currently applied where the plaintiff alleges facts that are consistent but the remedial structure allows a plaintiff to pursue only one of two courses. Often this is in the context where a court finds legislative intent that a plaintiff's remedies be

exclusive. *See e.g., Clark v. United States*, 19 Cl.Ct. 220 (1990) (congressional intent that must elect between tort recovery which must be pursued in district court and taking recovery which must be pursued in claims court); *Weiss v. International Brotherhood of Elec. Workers*, 729 F.Supp. 144 (D.D.C.1990) (statute prevents plaintiff from suing in federal court after pursuing administrative remedy).

**9.** Some commentators, however, have argued that much of what is decided under the doctrine of election of remedies should be decided under the doctrine of res judicata. *See* 18 C. Wright, A. Miller, & E. Cooper *Federal Practice and Procedure* § 4476 (1981).

*ton.*[10] In both cases the plaintiffs chose to pursue a remedy through the administrative process when they could have brought an action directly in federal court under section 1983. Thus it appears that the holding in *Punton* controls this case. However, Haphey and Bondietti argue that several factual differences between their situation and that of the plaintiff in *Punton* call for a different result.

### 4. Punton's Differences

Punton brought his section 1983 claim for violation of his due process rights. Haphey and Bondietti have sued for violation of their free speech rights under section 1983. This difference is immaterial. The *Punton* opinion was motivated not by the particular nature of the claim, but by the significant nature of the relief received in the state proceedings and by Punton's decision to seek relief in that forum. *See Punton*, 805 F.2d at 1380–83; *see also* Section III(B) (discussion of Judge Norris' dissent). Haphey and Bondietti also chose to seek relief through the administrative process and obtained $6,500 in attorneys' fees beyond the relief Punton received. Haphey and Bondietti have presented no sound policy reasons for allowing a free speech claimant to bring a section 1983 action subsequent to an award in a state proceeding when a due process claimant may not.

Punton appealed the decision of the administrative agency to state court. Haphey and Bondietti brought their action in federal court subsequent to an unreviewed administrative decision. Haphey and Bondietti argue that this differentiates their position because Punton could have brought his section 1983 action as part of his state court appeal and recovered full compensatory damages and attorneys' fees, while they have had no such opportunity. This argument misunderstands the analysis of the *Punton* opinion. Judge Goodwin's analysis assumed that Punton could not bring his section 1983 action in the state proceeding and that the relief Punton could obtain in federal court was not available in the state proceeding. *Punton*, 805 F.2d at 1380 n. 2, 1382.

An additional potential difference between *Punton* and the case at bar, which Haphey and Bondietti do not clearly raise, is the differing jurisdictional grants of the administrative agencies in each case.[11] In *Punton* the administrative agency could directly consider violations of Punton's constitutional rights (though not his section 1983 claims ·based on constitutional violations). The agency could not, however, award damages for emotional distress or attorneys' fees arising from violations of these rights. *Punton*, 805 F.2d at 1379–80; *Punton v. City of Seattle Public Safety Comm'n*, 32 Wash.App. 959, 650 P.2d 1138 (Wash.Ct.App.1982), *cert. denied*, 98 Wash.2d 1014 (Wash.1983). The record in this case does not establish that the ERB, the administrative agency before which Haphey and Bondietti brought their claims, had jurisdiction to directly consider violations of their constitutional rights. However, the ERB may consider violations of constitutional rights indirectly, by finding such violations to be contrary to Oregon's broad labor laws. *See Elvin v. Oregon Public Employees Union*, 102 Or.App. 159, 793 P.2d 338 (Or.Ct.App.) (ERB finds violation of constitutional rights violates Oregon labor statute), *review allowed*, 310 Or. 393, 798 P.2d 672 (1990). Thus though the particular manner in which the remedial jurisdiction of the agency in *Punton* and

---

**10.** In their reply brief, Haphey and Bondietti obliquely suggest, for the first time, that the fact that the limitation period is two years for a federal court section 1983 action and only six months for an ERB proceeding is significant. No chance of greater recovery is created in this case by the longer limitation period in the federal action because the federal action was filed more than one year and six months after the ERB action was begun.

**11.** We refer to the jurisdictional grants to the agencies, and not to that of the court to which the agency's decision was appealed in *Punton,* because the agency's jurisdictional grant in that case was binding on the court. *See supra* Section III(B).

that of the ERB are limited may be different, the substantive results are the same. Both agencies can consider the facts constituting a violation of constitutional rights, and neither agency can grant the full measure of relief that could be obtained in a section 1983 action in federal court.[12] The possible theoretical differences in the jurisdiction of the two agencies do not provide a persuasive ground for distinguishing *Punton.*

In summary, as applied in *Punton* and in the case at bar, the election of remedies doctrine prohibits a plaintiff from pursuing a subsequent section 1983 claim for damages in federal court where the plaintiff: 1) chooses to seek relief in a forum which can consider the facts allegedly constituting a violation of his constitutional rights, and 2) obtains a remedy which gives him substantially what he lost.

## IV. Conclusion

Election of remedies and res judicata are distinct doctrines. Thus *Punton's* application of election of remedies doctrine, as a matter of federal law, to a section 1983 action in federal court does not conflict with Supreme Court res judicata decisions. *Punton's* application of this doctrine does not allow Haphey and Bondietti to pursue their section 1983 claim after having obtained substantial relief in the ERB proceeding. The judgment of the district court is AFFIRMED.

12. The ERB can award attorney's fees. In this respect, it has greater remedial jurisdiction than the administrative agency in which Punton pursued his claim.