**In re Najah NAEMI,
Debtor-in-Possession.**

**Najah NAEMI, Plaintiff,**

**v.**

**Janfiaf NAEMI and Dolor
Naemi, Defendants.**

**Adv. No. 90–90479–LM11.
Bankruptcy No. 90–06755–LM11.**

United States Bankruptcy Court,
S.D. California.

June 13, 1991.

Mark R. Moore, Moore and Bailey, La Mesa, Cal., for DIP/Plaintiff.

James E. Lund, Escondido, Cal., for Janfiaf Naemi.

Scott A. Smylie, San Diego, Cal., for Dolor Naemi.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Before the Court is defendant's, Janfiaf Naemi ("Janfiaf"), Motion to Dismiss Najah Naemi's ("Najah") Complaint for Turnover of Property and Determination of Interest in Property.[1]  Alternatively, Janfiaf

---

1.  On January 16, 1991, a hearing was held on Janfiaf's motions.  At that hearing, the court directed the parties to submit supplemental pleadings.  The additional pleadings addressed issues raised by the court.  The matter was continued to March 14, 1991.  At the continued hearing, this court dismissed the equitable relief count through which the debtor sought to have the constructive trust declared void.  She held that the debtor should proceed pursuant to statutory authority.  She dismissed the determination of claim count as no claim had yet been filed.  Because the declaratory relief count duplicated previous counts within the complaint, it was dismissed.

seeks summary judgment on the complaint. This court has jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and (b), and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding in which the court may hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b).

The grounds for the motions are that two pre-petition state court judgments and/or rulings preclude the present action.[2] Because portions of the state court judgments and rulings are not entitled to full faith and credit under 28 U.S.C. § 1738, this court declines to accord them preclusive effect. For reasons set forth below, defendant's motions are denied.

### STANDARD OF REVIEW

■ Janfiaf supplied the court with points and authorities, declarations, exhibits and statements of uncontroverted facts in support of her preclusion motions. Najah responded in kind. As to the remaining counts within the complaint, the court treats Janfiaf's Motion to Dismiss under Bankruptcy Rules 7012(b) and (c). Bankruptcy Rule 7012(b), through reference to F.R.C.P. 12(b), provides, in part:

> [If such materials] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. See, Ortiz v. Cornetta, 867 F.2d 146, 148 (2d Cir.1989).

■ A court may convert a Rule 12(c) motion into a summary judgment motion only if the parties had notice of the conversion. The issue is whether each party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." M.J.M. Exhibitors, Inc. v. Stern, 770 F.2d 288, 295 (2d Cir. 1985), cert. denied, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986).

Here, defendant brought the motion to dismiss along with the motion for summary judgment. Objections to portions of the declarations and statement of uncontroverted facts were filed and considered by the court. Neither party can claim surprise at the court, treating the motion to dismiss as a motion for summary judgment.

In considering defendant's Motion for Summary Judgment, this court notes that an award of summary judgment is proper when it is shown on the pleadings and other evidence in the record "that there is no genuine issue as to any material fact and that the non-moving party is entitled to judgment as a matter of law." B.R. 7056(c), F.R.C.P. 56(c). To determine whether summary judgment is appropriate, the court must consider the record in the light most favorable to the non-moving party. Haphey v. Linn County, 924 F.2d 1512, 1514 (9th Cir.1991). All inferences are drawn in the manner most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) per curiam; Chase Manhattan Bank v. Jacobs, 48 B.R. 570, 572 (Bankr.S.D.Ca.1985). This court is bound to review the facts and issues before us in a manner which accords the benefit of the doubt to Najah.

### SUMMARY OF FACTS

To understand the background to plaintiff's motions for summary judgment, the court must explore and condense 20 years of tangled family history. This abridged history is written in the light most favor-

---

**2.** This opinion uses modern terminology to describe preclusive effects of prior adjudication. Many judges and commentators inconsistently use the terms *res judicata* and collateral estoppel. *Res judicata* is somewhat synonymous to claim preclusion. Issue preclusion roughly equates to collateral estoppel. In order to avoid confusion resulting from imprecise use of the terms *res judicata* and collateral estoppel, where possible, this opinion eschews the terms. In their stead are the terms: preclusion, issue preclusion and claim preclusion. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77, 104 S.Ct. 892, 894, 79 L.Ed.2d 56 (1984).

able to the non-moving party. *See Haphey*, 924 F.2d at 1514.

Janfiaf and her husband, Gorial Naemi, emigrated from Iraq to Detroit, Michigan in January 1967. Joining their journey to America were several (if not all) of their 11 children. One of these children was Najah Naemi (debtor). Najah states that while in Detroit, he and his brothers, Dolor Naemi and Salah Naemi, operated a market as partners.

In January 1975, Najah bought Dolor's and Salah's partnership interest. Thereafter, Dolor and Salah moved to San Diego and opened Pay–Low Market. Dolor and Salah each held a 50 percent partnership interest.

In August 1975, Janfiaf and Gorial moved to San Diego. Around this time, Salah was tragically killed during a robbery at the market. Salah died intestate. Janfiaf and Gorial inherited Salah's estate, including his 50 percent interest in Pay–Low Markets.

According to Najah, after the murder of Salah, his parents proposed that he relocate to San Diego. In exchange for Najah's transferring his interest in the Detroit Pay–Low Market to some of his other siblings, Najah claims his parents proposed to transfer their recently acquired interest in the San Diego Pay–Low Market to him.

In reliance on his parents' proposal, Najah moved to San Diego in early 1976. Najah and Dolor operated the market from 1976 onward. In his declaration, Najah states he sought to formalize the agreement with his parents but was prevented from doing so by the failure to distribute the assets from Salah's probate estate.

Sometime prior to February 1981, Najah contends discussions took place between himself and his father, Gorial, in which Gorial proposed to Dolor and Najah that they transfer a portion of the market to three of their younger brothers. Najah states these terms were acceptable to him but not to Dolor.

The fact that no written agreement was ever reached between Najah and his par-

ents is undisputed. In February 1981, Gorial died and Janfiaf became his sole heir. After Gorial's death, Najah continued to operate the market with Dolor. Najah asserts proceeds from the business were used to provide financial support for his relatives, including Janfiaf.

In 1982 Najah told Janfiaf that he wanted to move to Kansas. Janfiaf asked him to remain in San Diego and reiterated that Najah was a one half owner of the market.

During the period Dolor and Najah operated the market, the business expanded. It currently encompasses the original market, a laundromat called Ned's Coin Laundry [3] and a liquor store. Beyond the business expansion, other assets and interests were purchased. According to Janfiaf, Pay–Low's funds were used to acquire other property interests. They include the 420 South Meadowbrook property, the Dictionary Hill properties, the Otay Mesa Partnership Interest and the Miramar Limited Partnership Interest. According to Najah, he is personally obligated for loans on the acquired property. He also claims financial responsibility for Pay–Low's utility bills.

In 1988, Dolor conveyed a one-half interest in 420 South Meadowbrook to Najah. When Janfiaf learned of this conveyance, she brought a state court lawsuit to "recoup her inheritance." Additionally, Janfiaf filed motions in Salah's pending probate case requesting distribution of the estate to her.

Two preliminary orders were issued in the probate action. Each preliminary ruling distributed one-half of Salah's one-half interest in Pay–Low Market. Janfiaf contends Najah participated in the probate action. There is no factual support for this contention properly before the court. *See infra* note 5.

During the pending probate court action, Janfiaf filed a state court action against Dolor and Najah. In the complaint filed in January 1989, Janfiaf alleged fraud, misrepresentation and breach of fiduciary

---

**3.** Najah Naemi's nickname is Ned.

duty. She also requested imposition of a constructive trust.

In Najah's declaration in opposition to this motion, he states that after he was served with the summons and complaint in February 1989, Janfiaf's attorney granted him an "open extension" of time in which to answer the complaint. Throughout most of 1989, Najah and Janfiaf's counsel, James Lund, corresponded. On November 8, 1989, Janfiaf filed a request to enter default judgment. According to Najah, he attempted to answer the complaint on November 10, 1989. He states that he telephoned Mr. Lund and Mr. Lund agreed to set aside the default.

Sometime after their alleged conversation, Najah filed a motion to set aside the default. According to Najah, once this motion was filed, Mr. Lund changed his position on setting aside the default. On January 10, 1990, Najah's motion to set aside the default was denied. His motion to reconsider the denial of the motion was likewise denied.

On April 25, 1990, a default prove-up hearing was held before The Honorable Kevin Midlam. Janfiaf was awarded $400,000 in compensatory damages and $100,000 in punitive damages. A constructive trust was imposed for the benefit of Janfiaf over the 420 South Meadowbrook property, the Dictionary Hill properties, the Otay Mesa Partnership Interest and the Miramar Limited Partnership Interest. This judgment was entered on May 14, 1990. On August 9, 1990, Najah filed his chapter 11 petition.

## ANALYTICAL FRAMEWORK

In determining whether this court should grant preclusive effect to prior state court judgments, this court follows the analytical framework enunciated by the Supreme Court in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1984). Pursuant to *Marrese*, federal courts must examine state preclusion law to determine whether the subsequent issue or claim is barred. If state preclusion law bars the re-litigation of the claim or issue, the full

faith and credit section, 28 U.S.C. § 1738, mandates federal courts grant preclusion unless a federal exception to full faith and credit exists.

■ Issue and claim preclusion are affirmative defenses. *See* Bankruptcy Rule 7008(c), F.R.C.P. Rule 8(c). As such, the party asserting preclusion bears the burden of proof. *See Priest v. American Smelting & Refining*, 409 F.2d 1229 (9th Cir.1969) (Under Washington law, the party asserting claim preclusion bears the burden of proof in establishing the identity of facts or issues); *Bryson v. Guarantee Reserve Life Ins. Co.*, 520 F.2d 563 (8th Cir.1975) (As preclusion is an affirmative defense, burden of proof is on party asserting the defense.).

As Janfiaf is the party asserting preclusion, she bears the burden of proof. She must establish that by applying the *Marrese* framework to the two state court actions and rulings, the current complaint is barred.

## STATE PROBATE ACTION

■ In late 1989, Janfiaf petitioned the Superior Court for a preliminary distribution of Salah's estate. On February 15, 1990, the Superior Court approved the petition for preliminary distribution. Janfiaf was authorized to distribute to herself one-half of Salah's one-half interest in the Pay–Low Market, including bank accounts, delivery equipment, store fixtures and equipment, leases and inventory held in the name of the company.

A second petition for preliminary distribution was brought before the Superior Court in March 1990. This second petition for distribution was approved. It authorized Janfiaf to distribute to herself the remaining one-half of Salah's one-half interest in Pay–Low Market.

When this court first held arguments on Janfiaf's motions, Janfiaf argued for preclusion based on the judgment in the state court action. She did not seek to assert preclusion based on the probate action.[4]

4. Janfiaf Naemi's Points and Authorities in Support of Motion to Dismiss or Motion for Sum-

The court directed supplemental papers to be filed. In Janfiaf's supplemental pleadings, she argues the probate court judgments awarded certain property to her. Further, she claims that Najah appeared in the probate action through his attorney. The record before the court is devoid of any evidence describing his participation.[5]

In addition to the lack of evidence concerning Najah's participation in the probate action, Janfiaf has failed to demonstrate that a California court would grant preclusive effect as against Najah to the preliminary rulings of the probate court. *Marrese* requires federal courts grant a state court judgment full faith and credit when a state court grants preclusive effect to either the claim or issues. No state law authority on this point was cited or argued by Janfiaf. Because of the failure of Janfiaf to satisfy her burden of proof as to preclusion on both legal and factual grounds under § 1738, this court cannot accord full faith and credit to the probate court's rulings.

### STATE SUPERIOR COURT ACTION

▇ Juxtaposed to the probate action is Janfiaf's state court action against Najah and his brother Dolor. As stated above, Janfiaf obtained a default judgment against Najah. Based on this default judgment through which a constructive trust was imposed, Janfiaf strenuously asserts preclusion as an affirmative defense to Najah's complaint.

### A. *Would California grant preclusive effect to the state court default judgment?*

▇ Under the *Marrese* analysis, this court must determine whether a California court would grant preclusive effect to the

default judgment entered. A review of the case law indicates that it does. *O'Brien v. Appling*, 133 Cal.App.2d 40, 42, 283 P.2d 289 (1955); *Horton v. Horton*, 18 Cal.2d 579, 585, 116 P.2d 605 (1941). Under California law, a party who permits a default to be entered, confesses the truth of all the material allegations in the complaint. A default judgment is as conclusive upon the issues tendered by the complaint as if rendered after an answer is filed and a trial is held on the allegations. *O'Brien*, 133 Cal. App.2d 40, 42, 283 P.2d 289. Because California law accords preclusive effect to a default judgment, under the full faith and credit statute, this court must give the default judgment obtained against Najah preclusive effect unless a federal statute or policy provides an exception.

### B. *Is there an exception to the full faith and credit section in federal law or policy?*

28 U.S.C. § 1738, commonly known as the "full faith and credit" statute, provides in pertinent part:

Judicial proceedings [of any court of any state of the United States] shall have the same full faith and credit in every court within the United States in its territories and Possessions as they have by law or usage in the courts as such State, Territory, or Possession from which they are taken.

This statute requires federal courts, including bankruptcy courts, to preclude relitigation of claims or issues resolved by prior and final judgments rendered by state courts. The federal court which is presented with a final state court judgment must give it the same preclusive effect that another state court would give the judgment.

---

mary Judgment filed December 19, 1990, state that Najah should be "collaterally estopped [and] precluded from asserting any issues which have been previously determined in the State Court action." At p. 10. Janfiaf contends that all the issues germane to Najah's complaint for turnover of assets and for determination of the estate's interest in property were determined in the default judgment.

5. Subsequent to the March 14, 1991 hearing, at which the court heard supplemental arguments

concerning the preclusive effect of the prior state court actions and took the motions under submission, Janfiaf's bankruptcy counsel and probate counsel submitted post-hearing declarations. Because the court did not direct the filing of post-hearing declarations and because Janfiaf Naemi failed to obtain court-approval for the submission of additional declarations, the declarations are not properly before the court and have not been considered.

*In re Comstock Fin. Serv., Inc.*, 111 B.R. 849, 854 (Bankr.C.D.Cal.1990). Once the determination is made that a state court would give preclusive effect to the prior state court judgment, the federal court must inquire whether any federal statute or policy governing the litigation either expressly or implicitly repeals or creates an exception to the full faith and credit section. *Marrese*, 470 U.S. at 383, 105 S.Ct. at 1333.

■ In the context of bankruptcy cases, courts have found several exceptions to the application of the full faith and credit doctrine. Where an exception exists, a bankruptcy court may disregard the preclusive effect of a state court judgment. A bankruptcy court may look beyond a state court default judgment where the judgment was procured by collusion or fraud, *Margolis v. Nazareth Fair Grounds & Farmers Mkt.*, 249 F.2d 221, 223–25 (2d Cir.1957), or where the rendering court lacked jurisdiction, *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970 (1946); *Comstock Fin. Serv.*, 111 B.R. at 858–59. A bankruptcy court may look beyond a state court judgment where it is necessary to determine whether the state judgment involved fraud and was non-dischargeable. *Brown v. Felsen*, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979). Where it is necessary for the bankruptcy court to determine the amount of a tax, fine or penalty pursuant to 11 U.S.C. § 505, the court may also look beyond the state court judgment. *In re Buc-*

*hert*, 69 B.R. 816 (Bankr.N.D.Ill.1987), *aff'd*, 1987 WL 16019 (N.D.Ill.1987).

In bankruptcy cases, assertion of preclusion based on a default judgment commonly arises in one of two ways. First, creditors, as plaintiffs in non-dischargeability actions, often attempt to employ preclusion offensively. If permitted, this prevents debtors from offering affirmative defenses to the complaints for non-dischargeability based on state court default judgments. Bankruptcy courts generally deny preclusion in these situations. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (Claim preclusion is not permitted as to state court default judgment); *Houtman v. Mann*, 568 F.2d 651, 653–54 (9th Cir.1978)[6]; *But see, Harris v. Byard*, 47 B.R. 700, 707 (Bankr.M.D.Tenn.1985) (Because the implied repealer to § 1738 is very narrow, issue preclusion in the context of a § 523 adversary proceeding is permitted as to a state court default judgment.)

Second, creditors who obtained a state court default judgment against a debtor and subsequently filed a claim against the estate, when faced with a claim objection by the trustee or the debtor-in-possession, often assert preclusion defensively. Most courts allow preclusion in this situation. *See, e.g., Comer v. Comer*, 723 F.2d 737, 740 (9th Cir.1984) (Preclusion should be applied to prevent the re-litigation of the amount of a claim in bankruptcy.); *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir.1987) (While merits of claim are doubtful, debtor should have attacked this claim in state court.)[7]; *But see, Pepper v. Lit-*

---

**6.** Based on the court's understanding of Janfiaf's arguments, she claims the recent Supreme Court case of *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), and the previous Supreme Court cases of *Marrese* and *Migra* effectively overrule *Houtman* and *Brown v. Felsen*. This argument is based on footnote 11 of the *Grogan* opinion. In the footnote, the Supreme Court stated that "collateral estoppel principles do apply in discharge exception proceedings pursuant to § 523(a)." *Grogan*, —— U.S. at ——, 111 S.Ct. at 658.

While the Supreme Court stated collateral estoppel principals apply in discharge proceedings, the Supreme Court did not mandate automatic issue preclusion. *Id.* A tenet of federal preclusion law is the existence of a full and

final hearing at which the issue was actually litigated. Such a hearing is conspicuously absent from most default judgments.

**7.** While not disputing the result in *Kelleran,* this court disagrees with its analysis for determining whether preclusive effect should be granted to former adjudication. The *Kelleran* court commenced its analysis by focusing on the full faith and credit section, 28 U.S.C. § 1738. According to the majority in *Kelleran,* full faith and credit must apply to former state court adjudication unless one of two exceptions exist.

Absent from the opinion is any mention of the previous Supreme Court opinions in *Marrese* or *Migra.* In *Marrese,* the Supreme Court instructs federal courts to determine whether express or implied exceptions exist to the full faith and

*ton,* 308 U.S. 295, 305–08, 60 S.Ct. 238, 244–46, 84 L.Ed. 281 (1939) (Bankruptcy court should sift through the circumstances surrounding any claim and ascertain whether the claim is without lawful existence, even if such claim is reduced to judgment.).

■■■ Here, this court is faced with a unique situation in which a debtor is attempting to set aside only that portion of a state court default judgment which imposed a constructive trust over the majority of debtor's assets. Unlike the situation in which a creditor asserts a claim against the estate based on a default judgment, imposition of a constructive trust is an equitable remedy. *Torres v. Eastlick (In re North American Coin & Currency, Ltd.),* 767 F.2d 1573, 1575 (9th Cir.1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). It is a remedy designed to equitably distribute property or money taken by force or fraud. *Id.* at 1575; *Comstock Fin. Serv.,* 111 B.R. at 859. Imposing a constructive trust in favor of one creditor deprives other creditors of a *pro rata* recovery from debtor's estate and is contrary to one of the strongest policies underlying the bankruptcy law: ratable distribution of assets to all creditors. *North American Coin,* 767 F.2d at 1575; *Elliott v. Frontier Properties,* 778 F.2d 1416, 1419 (9th Cir.1985).

Mechanically applying the doctrines of preclusion deprives this court of its ability to achieve an equitable distribution of the estate's assets in harmony with the Bankruptcy Code. This is why the determination of what is property of the estate is a core proceeding (28 U.S.C. § 157(b)(2)(A) & (E)) and why the imposition of constructive trusts is not favored. *See North American Coin,* 767 F.2d at 1575–76. The policy of equitably distributing property among all creditors of the estate provides the necessary exception to the full faith and credit doctrine.

In this case, substantial bankruptcy policies dictate against barring the present suit because of the previously imposed constructive trust. Janfiaf, as constructive beneficiary, is merely one of several creditors of this estate, and an insider at that. *See* 11 U.S.C. § 101(31)(A)(i). By obtaining the constructive trust through a default judgment, she has deprived other creditors of this estate of any *pro rata* recovery.

Reinforcing our decision to deny preclusive effect to the constructive trust judgment are two concerns. First, the record before this court is unclear as to whether Janfiaf traced the assets in Salah's 1975 estate forward to those assets upon which the constructive trust was impressed. *See Comstock Fin. Serv.,* 111 B.R. at 859 (Bankruptcy court has equitable power to avoid the constructive trust because creditors failed to trace their property into commingled assets of the estate). Second, while some evidence was presented at the default prove-up hearing, Najah does not appear to have been given an opportunity to confront the evidence or offer contrary proof.

### CONCLUSION

Neither the Superior Court constructive trust judgment nor the preliminary probate court rulings bar the present action. Since Janfiaf has failed to meet her burden of proof on the preclusion issues, this court must deny her motions.

Counsel for debtors is directed to prepare an order in conformance with this Memorandum Decision within ten (10) days from the date of its entry.

---

credit section. If exceptions exist, federal courts should apply federal preclusion law.

By severely limiting the exceptions to the full faith and credit section within the bankruptcy arena, *Kelleran* appears to foreclose the possible development of other exceptions. This limita-tion appears contrary to the dictates of *Marrese.* *Marrese* instructs federal courts to determine whether exceptions exist on a case-by-case basis. Because of this analytical problem, this court declines to follow *Kelleran's* reasoning.